MARTIN L. CONRAD ET UX *v.* HOWARD TOMLINSON,
B/N/F HARRIET C. CRAFT.

[No. 272S25. Filed March 7, 1972.]

*Arch N. Bobbitt, C. Wendell Martin,* of Indianapolis, for appellants.

*Edward J. Erpelding, Joe L. Tipton, Frank E. Spencer,* of Indianapolis, for appellees.

HUNTER, J.—Petitioner, Howard Junior Tomlinson is before this Court on an Application for Transfer seeking review of the Appellate Court's decision in *Conrad* v. *Tomlinson* (1971), 270 N. E. 2d 879. Tomlinson, plaintiff-appellee, received a favorable judgment in the trial court in the amount of $100,000.00 for injuries received by him in a truck accident on defendants' farm. The Appellate Court held that the trial court erred in refusing to declare a mistrial for alleged misconduct of the Bailiff in entering the jury room while the jury was deliberating. The Appellate Court also found error in the giving of an instruction which authorized the jury to find that the defendants, Martin and Opal Conrad, had violated the Compulsory Education Act of 1921. The trial court's judgment was reversed, and a new trial ordered. For reasons hereinafter stated, the Petition to Transfer is granted.

The evidence most favorable to the plaintiff-appellee, Tomlinson, reveals that on or about August 6, 1963, he was employed by the Conrads to perform certain tasks on their farm. At the time, Tomlinson was thirteen years of age, and he resided with his family in a tenant house on the farm. On

the day of the accident he flagged down a farm dump truck loaded with corn cobs which was passing his house at noon-time. Tomlinson had been instructed by the farm foreman to stop the truck and tell the driver, who was also a farm employee, that he should dump the cobs before he returned home for lunch. After being so informed, the driver of the dump truck backed the truck up the road to the entrance to the field where the cobs were to be dumped. Tomlinson and his younger brother, Billy, rode on the truck until it reached the closed gate to the field. Tomlinson got off the truck, opened the gate, and closed it after the truck had passed through. He then ran after the truck, which had failed to stop, and attempted to jump onto the right running board. Tomlinson was successful in reaching the truck, but he was unable to to hold on to the side. He fell and was run over by the rear wheels of the truck, receiving severe injuries.

Paragraph I of the amended complaint alleges that the defendants invited the plaintiff to ride on the running board of the truck and that he was injured as a result of several specific acts of negligence. Paragraph II alleges that Mr. and Mrs. Conrad were subject to the Employers Liability Act; that the plaintiff was their employee; and that the Conrads were negligent, both vicariously and directly, in that: (a) the driver-employee drove the truck away from the gate without using reasonable care due to his failure to ascertain whether plaintiff had successfully boarded the truck; (b) the driver-employee drove the truck when it was so loaded as to obstruct the view of the driver of the truck to the side of the vehicle; (c) they failed to maintain the truck in a safe condition, and instead allowed it to be driven when it was not safely equipped; (d) they failed to have the truck licensed under the laws of the State of Indiana; (e) they employed an incompetent driver in that he was not licensed to drive in the State of Indiana, and he could not read; (f) they employed the plaintiff who was only thirteen years of age and incapable of comprehending dangers; (g) they failed to pro-

vide plaintiff with a safe place to work; (h) they failed to equip the motor with a good muffler; (i) through the farm foreman they ordered plaintiff to ride upon the truck when they knew it was constructed so that a person riding on the running board could fall off and be run over by the rear wheels; and that such negligence was the proximate cause of plaintiff's injuries. The driver-employee was also joined as a defendant, but the jury found that the employee was not negligent.

In answer to an interrogatory, the jury found that plaintiff was an employee of Mr. and Mrs. Conrad. Thus it was not unreasonable for the Appellate Court to conclude that the verdict stood on legal paragraph II of the amended complaint. However, it should be noted that the evidence most favorable to the plaintiff-appellee is sufficient to sustain a verdict under either paragraph of the complaint.

Plaintiff's Instruction No. 42, the giving of which was found to constitute reversible error, reads as follows:

> "With respect to Paragraph II of Plaintiff's Amended Complaint you are instructed that at the time of the injuries complained of in said complaint, there were statutes of the State of Indiana in full force and effect which provided in part as follows:
>
> 'No minor under the age of sixteen (16) shall be employed, permitted or suffered to work in any capacity . . . in any . . . occupation dangerous to life or limb. . . .'
> and as follows:
>
> 'In all actions for damages for personal injuries by any minor . . . because of his being employed, retained in employment, required or permitted to work in violation of any of the provisions . . . of this act, the employer shall not be permitted to defend upon the ground that such minor had assumed any risk of the employment, or that the injury was due to the negligence of a fellow servant, or to the contributory negligence of such minor. In any such action, it shall be sufficient to allege and prove that such minor was employed, retained in employment, required or permitted to work in violation of any provision hereof, and that the injury arose out of such employment or performance of such work.'

"Therefore, if you find from a preponderance of the evidence in this case that at the time of the injuries complained of, the plaintiff, Howard Tomlinson, was a minor under the age of sixteen, was employed, retained in the employment, required, suffered or permitted to work in any capacity on the Conrad Farm by the defendants, Martin L. Conrad and Opal G. Conrad, and each of them, that said work was dangerous to the life and limb of Howard Tomlinson, and that his injuries arose out of such employment or the performance of such work, then defendants, and each of them, may not defend against Paragraph II of Plaintiff's Amended Complaint upon the grounds that the plaintiff had assumed any risk of said employment, or that the injury was due to the negligence of a fellow servant, or due to the contributory negligence of the plaintiff."

The statutory language contained in the above instruction is taken from sections of the Compulsory Education Act of 1921, Ind. Ann. Stat. §§ 28-501 *et seq.* (Burns 1948). As amended since the trial the Act is IC 1971, 20-8-8-1 *et seq.* or Ind. Ann. Stat. §§ 28-5306 *et seq.* It should also be noted that the prohibition against employing a child under the age of sixteen years in any occupation "dangerous to life or limb" is no longer contained in the Act. If this Act is applicable, the plaintiff's contributory negligence, if any, would not be available as a defense. The Appellate Court, in regard to this matter, held:

"[A] consideration of the entire act leads to the inescapable conclusion that the General Assembly did intend to include any work on a farm in the phrase 'any other occupation dangerous to life or limb.' " *Conrad* v. *Tomlinson, supra,* 270 N. E. 2d at 882.

We do not agree.

Ind. Ann. Stat. § 28-518 (Burns 1948), provided as follows:

"No minor under the age of fourteen [14] years shall be employed or permitted to work in any gainful occupation other than farm labor or domestic service, or as a caddie to any person or persons who are engaged in playing the game of golf or as a carrier of newspapers. It shall be unlawful for any person, firm or corporation to employ or

permit any minor to work in any occupation or service whatsoever during any of the hours when the common schools of the school corporation in which such minor resides are in session, contrary to the provisions of sec. 6 [§ 28-506] of this act."

Ind. Ann. Stat. § 28-522 (Burns 1948), provided:

"No minor under the age of sixteen [16] years shall be employed, permitted or suffered to work in any capacity in any of the following occupations: Oiling, wiping or cleaning machinery, or assisting therein; operating, or assisting in the operation of, or offbearing at, any of the following machines or apparatus, whether power driven or not: Circular or band saws, wood shapers, wood joiners, planers, stamping machines used in sheet metal or tinwork manufacturing, stamping machines in washer or nut factories, or any other stamping machine used in stamping metal, boiler or other steam generating apparatus; dough bakers or cracker machinery of any description, wire or iron straightening machinery, rolling mill machinery, punch, shears, drill press, grinding or mixing mills, calender rolls in rubber manufacturing, laundry machinery, corrugating rolls of the kind used in roofing and washboard manufacturing metal or paper cutting machines, corner staying machines in paper box factories, assorting, manufacturing or packing tobacco, in or about any mine, quarry, or excavation, or in any hotel, theatre, bowling alley, *or in any other occupation dangerous to life or limb,* or injurious to the health or morals of such minor." (our emphasis)

Ind. Ann. Stat. § 28-523 (Burns 1948), read, in part:

"No minor under the age of eighteen [18] years shall be employed, permitted or suffered to work in any capacity in any of the following occupations: Oiling and cleaning moving machinery; in the operation of emery wheels except for the sharpening of tools used by an apprentice in connection with his work; or at any abrasive, polishing or buffing wheel; in the operation of any elevator, lift, or hoisting machine; in or about establishments where nitroglycerine, dynamite, dualin, guncotton, gunpowder, or other high explosives are manufactured, compounded or stored; in dipping, dyeing or packing matches; in any saloon, distillery, brewery, or any other establishment where malt or alcoholic liquors are manufactured, packed, wrapped, bottled or in any establishment where the principal business of such establishment is the sale of such malt or alcoholic liquors;

in any coal mine; *or in any other occupation dangerous to life or limb. . . ."* (our emphasis)

The first statute set forth above, § 28-518, expressly permits a minor under the age of fourteen years to be employed as a farm laborer. The latter two statutes expressly provide that minors of a certain age class, of which class Tomlinson was a member at the time of the accident, *are not to be employed in any occupation dangerous to life or limb.* Farm labor embraces a variety of duties ranging from feeding chickens to operating a corn picker. It is one thing to permit a minor to be employed on a farm; it is quite another thing to say that after a minor has been so employed it is permissible for him to perform any and all types of farm labor without regard to the nature of such labor. This Court is not persuaded that the General Assembly was unconcerned with the nature of the duties to be performed by a thirteen year old boy simply because his duties were to be performed on a farm.

Ind. Ann. Stat § 28-519 (Burns 1948), relating to Employment Certificates for minors, expressly provided that employment certificates were not required for minors between the ages of fourteen and sixteen years to perform farm labor. Implicit in this language is that certificates *are required* for minors *less* than fourteen years of age. There is no evidence in the record which would tend to indicate one way or the other as to whether an Employment Certificate had been obtained. However, it is significant to note that in securing such a certificate, the prospective employer is required to set forth the *nature of the work which the minor intends to perform.* Thus it appears clear to this Court that the General Assembly was, in fact, concerned with the nature of a minor's employment, and therefore it was not error to give Plaintiff's Instruction No. 42. It is unreasonable to assume that a job title such as "farm laborer" relieves the employer from any responsibility under this Act as to the nature of the duties that are assigned to a thirteen year old youth.

Secondly, the jury room incident, for which the Appellate Court held that a mistrial should have been granted, occurred as follows: After the jury had been deliberating for some six or seven hours the Bailiff was summoned to the jury room by the jury. The Bailiff entered the jury room and remained with the jury for several minutes. The jury was of the opinion that a verdict form had been lost or misplaced. When the Bailiff came out she was carrying five verdict forms which she took with her to the trial Judge's Chambers. The Judge was informed that a verdict form could not be found. He instructed the Bailiff to return to the jury room and instruct them that they should search again as he was certain the necessary forms had been provided. The Judge further told the Bailiff to inform the jury that if they had any questions regarding the form of their verdict or any other matter, they should come into open court to ask same. The Bailiff returned the five verdict forms to the jury room and instructed the jury as requested by the Judge.

Defendants' counsel immediately moved for a mistrial, which was denied. Approximately one hour later, the Bailiff was again summoned to the jury room where she was informed that the jury had reached a verdict. Again defendants' counsel moved for a mistrial, and again it was denied.

In regard to this matter, the Appellate Court made the following statement, with which we are in full agreement:

> "[W]e are satisfied that no jury deliberations took place in the bailiff's presence, that she had no communication with them concerning their deliberations, and that her presence in the jury room had no effect on their verdict. We are also satisfied that the judge's only communication to the jurors, delivered verbally by the bailiff, was the innocuous suggestion that they were in possession of all the necessary verdict forms and that if they had any further question they should come into open court and ask it." *Conrad* v. *Tomlinson, supra,* 270 N. E. 2d at 882.

Although the preferred procedure in matters such as this is that the Bailiff instruct the jury that they could request

to be brought into open court to ask their question, this Court is of the opinion that the failure to follow such procedure does not constitute reversible error unless some harm or prejudice has been suffered by the objecting party. When an irregularity such as this occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed.

In the case at bar, no request for further instructions as to any part of the testimony or as to any point of law was made by the jury. Furthermore, no instructions were given to them. The jury was simply of the opinion that a verdict form was missing. The jury was informed that the necessary forms had been provided, and if there were any uncertainties regarding this matter they could request to be brought into open court for further clarification. Therefore, this Court concludes that there was no violation of IC 1971, 34-1-21-6, (Ind. Ann. Stat. § 2-2017 [1968 Repl.]), which was in effect at the time of this trial. Nor is there any evidence that indicates or tends to indicate that any harm was suffered by the defendants. Therefore, no reversible error occurred in regard to this incident.

In their Motion for New Trial, the overruling of which was the sole assignment of error on appeal, defendant-appellants also alleged that the trial court committed reversible error in refusing to give certain instructions to the jury. This issue was not dealt with by the Appellate Court. The Motion for New Trial reads, in part, as follows:

"The Court erred in refusing to give to the jury at the request of these defendants, *each* of the written instructions tendered and requested by the defendants and numbered . . . 11, . . . 16, . . . 25, . . . 27, 28. . . ." (our emphasis)

Plaintiff-appellee contends that no error is presented by the specification of the Motion for New Trial unless *all* of the

instructions referred to therein should have been given by the trial court. A similar question was presented to the Court in *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531, 53 N. E. 763. In resolving this issue, the Court correctly stated:

> "Appellee also contends that neither the instructions given nor those refused are in the record so as to question them severally. The alleged error is stated in the motion for a new trial as follows: For 'error of the court in refusing to give to the jury each of the instructions severally asked, numbered one, two, three,' etc. For 'error of the court in giving to the jury each of the instructions given by the court numbered one, two, three,' etc. 'Each' is a word of distribution,—implies severalty,—and the assignment is sufficient to challenge each instruction of each set. *Terre Haute, etc., R. Co.* v. *McCorkle,* 140 Ind. 613." 152 Ind. at 533, 53 N. E. at 764.

In the case at bar, the Motion for New Trial expressly alleged that the trial court erred in refusing to give *each* of the tendered instructions. Therefore, the assignment is sufficient to challenge the refusals separately. Defendant-appellants' objections to the refusal to give the above instructions are fully briefed, and therefore these objections have not been waived on appeal.

Defendants' Instructions numbered 11, 16, 25, 27 and 28 requested that the trial court instruct the jury to find for the defendants upon certain allegations of negligence contained in the plaintiff's complaint. The complaint was sent with the jury to the jury room and they were instructed to consider the pleadings to determine whether the allegations contained therein had been proven by a preponderance of the evidence at trial. Plaintiff's Instruction No. 51 instructed the jury that it was only necessary that the plaintiff prove at least one of the allegations of negligence contained in the complaint. The defendant-appellants argue that certain allegations of negligence should have been withdrawn from the consideration of the jury because: (1.) there was no evidence tending to show that the alleged acts of negligence were the proximate cause of the injury and/or; (2.) there was no evidence tending to prove

that the alleged acts of negligence were, in fact, committed. Therefore, defendant-appellants contend that the refusal to give Defendants' Instructions numbered 11, 16, 25, 27 and 28 was prejudicial error.

The allegations of negligence sought to be withdrawn from consideration are summarized as follows:

1. The failure to have the dump truck licensed as a motor vehicle under the laws of the State of Indiana. (Paragraph I)

2. The employment of the truck driver who was not licensed to operate a motor vehicle under the laws of the State of Indiana, and who could not read. (Paragraphs I and II)

3. The operation of the dump truck when it was so loaded as to obstruct the view of the driver to the side of the vehicle. (Paragraphs I and II)

The evidence most favorable to plaintiff-appellee reveals that the dump truck was not licensed under the laws of the State of Indiana. The evidence also indicates that the driver of the truck did not have a valid operator's license under Indiana law. In *Northern Indiana Transit, Inc.* v. *Burk* (1950), 228 Ind. 162, 89 N. E. 2d 905, this Court held that a violation of a statutory duty must also be the proximate cause of the injury to constitute actionable negligence. In the case at bar, there is a total lack of any evidence from which a jury could infer that the injury resulted from the failure to comply with the State licensing requirements. Where there is no causal connection between the violation of the statute and the injuries received by the plaintiff, the jury should not be permitted to consider the evidence of the violation as tending to show negligence. See, *Hayes Freight Lines* v. *Wilson* (1948), 226 Ind. 1, 77 N. E. 2d 580. Therefore, it was error to refuse to give defendant-appellants' instructions which would have instructed the jury to find for the defendants on those issues.

Similarly, there is a complete lack of evidence that the truck was loaded so as to obstruct the view to the side of the

truck. The only evidence relating to the loading of the truck indicates that side boards had been installed on the truck to permit a *higher* load, not a *wider* load. To be sure, installing the side boards obstructed the view out of the rear window of the truck, but even this fact, considered alone, is not sufficient to constitute negligence. Many trucks operating on our highways afford the driver with absolutely no view out of the rear window. There being no evidence as to the *load obstructing the view to the side* of the truck, it was error to permit the jury to consider it. See, *Tribune-Star Publishing Co.* v. *Fortwendle* (1954), 124 Ind. App. 618, 115 N. E. 2d 215, Reh. Den. 116 N. E. 2d 548.

Since Plaintiff's Instruction No. 51 instructed the jury that it was only necessary that plaintiff prove *one* of the allegations of negligence, this Court can only conclude that the decision of the jury may have been based upon one of the three aforementioned allegations of negligence, and therefore the refusal to give Defendants' Instructions numbered 11, 16, 25, 27 and 28 was prejudicial to defendant-appellants.

Since this matter will have to be relitigated, it should be noted that it was proper to permit the jury to consider that the truck was in a state of disrepair. The evidence most favorable to the plaintiff-appellee tends to indicate that the excessive noise produced by the absence of mufflers, as well as the broken side-view mirror and the inadequate springs and shock absorbers might well have constituted acts or omissions which were the proximate cause of the injury.

There was also no error in instructing the jury that the Employer's Liability Act, IC 1971, 22-3-9-1 *et seq.*, (Ind. Ann. Stat. §§ 40-1101 *et seq.* [1965 Repl.]), applies to farm labor. See, *Crist Inc.* v. *Whitacre* (1970), 147 Ind. App. 16, 258 N. E. 2d 165.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause remanded for proceedings not inconsistent with this opinion.

Judgment reversed.

Arterburn, C.J., DeBruler and Givan, JJ., concur; Prentice, J. dissents.

NOTE.—Reported in 279 N. E. 2d 546.