CURTIS WAYNE GANN *v.* STATE OF INDIANA.

[No. 274S43.  Filed June 24, 1975.  Rehearing denied September 16, 1975.]

*Jack Rogers,* of Franklin, *Frank Spencer,* of Indianapolis, *R. M. Gholston,* of Franklin, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

ARTERBURN, J.—A jury convicted Appellant of First Degree Murder. Appellant's Motion to Correct Errors set out thirty (30) alleged errors. However, in this appeal, taken pursuant to Ind. R. Ap. P. 4(A)(7), Appellant argues only ten (10) of these issues. Furthermore, one of these grounds is the denial of Appellant's tendered Instruction No. 17. Ind. R. Crim. P. 8 states that "no party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule (10) or the number fixed by the court order, whichever is greater." Since the trial court allotted no additional instructions, this ground is not available to Appellant. We proceed to a consideration of the nine (9) remaining issues.

## I.

Appellant tendered the following Instruction No. 10 and the trial court refused to give same.

"You are instructed that the act of killing maliciously, without premeditation, does not constitute the crime of first degree murder. Both maliciousness and premeditation must have been formed in the mind of the defendant prior to the killing. You are instructed that to find the defendant guilty of first degree murder, you must find that there was time and opportunity on the part of the defendant for deliberate thought, and that after his mind conceived the thought of taking life, the conception was meditated upon, and he formed in his mind deliberate determination to do the act of killing. Therefore, if you find the defendant guilty of killing Jimmy and Brenda Powers maliciously, but did not kill them with premeditation as defined in these instructions, you must find the defendant not guilty of first degree murder."

Instead, the trial court gave the following as Preliminary Instruction No. 10:

"As heretofore stated, murder in the first degree involves the elements of malicious intent and premeditation. Malice has already been defined. To constitute premeditation, there must be time for deliberate thought after the mind conceives the idea of taking life, but there need be no appreciable space of time between the formation of the intent to kill and the attempted execution of the design. They may be as instantaneous as successive thoughts. If the design to kill is fully formed and the intent meditated upon, it matters not how soon the purpose is carried into execution, but the length of time intervening may be considered as tending to prove the existence or non-existence of premeditation."

Appellant argues that his instruction should have replaced the court's. The court's instruction is a correct statement of the law with regard to premeditation and adequately covers the law of the tendered instruction. *Cooper* v. *State*, (1974) 261 Ind. 659, 309 N.E.2d 807; *Sanders* v. *State*, (1972) 259 Ind. 43, 284 N.E.2d 751; *Pierce* v. *State*, (1970) 253 Ind. 650, 256 N.E.2d 557.

## II.

(A) The remaining nine (9) issues raised by Appellant may be considered as a group. In their entirety and separately these allegations assert that Appellant was denied a fair trial by irregularities in the conduct of the jury and the court's bailiff. Specifically, Appellant alleges that he was prejudiced by each of the following events:

(1) One juror had notes which she had made overnight at her home for her own use during deliberation.

(2) In regard to the use and disposition of these notes the bailiff transmitted directions from the trial judge to the jury without the knowledge or presence of the defendant.

(3) Moreover, the bailiff misled the jury by directing them in a manner not authorized by the trial judge.

(4)   In violation of Ind. Code § 35-1-37-4, Burns § 9-1810 (1956 Repl.) the bailiff conversed with the jurors at lunch.

(5)   The bailiff allowed the jury to separate during a drive to lunch and during a coke break.

(6)   The bailiff allowed the jurors to converse with the waitress during lunch.

A hearing was held on the Motion to Correct Errors. Eight jurors and the bailiff testified at this hearing. At this hearing there was no testimony which indicated that the Appellant was harmed by any of the alleged irregularities. Misbehavior or irregularity on the part of a juror must—in order to warrant a new trial—be gross and it must be shown to have probably injured the accused. Ind. Code § 25-1-42-3, Burns § 9-1903 (3); *Oldham* v. *State*, (1967) 249 Ind. 301, 231 N.E.2d 791; *Hatfield* v. *State*, (1962) 243 Ind. 279, 183 N.E.2d 198. At the hearing on the Motion to Correct Errors the state affirmatively showed that the separation of the jury did no harm to the defendant because nothing of a prejudicial nature occurred during the separations. Therefore, it was proper to refuse a new trial. *Gibson* v. *State*, (1971) 257 Ind. 23, 271 N.E.2d 706; *Riley* v. *State*, (1884) 95 Ind. 446. These same principles apply to the incidents of conversation. Upon examination we find that the conversation with the waitress covered the matter of giving food orders and the lunchtime conversation between bailiff and juror involved vegetable gardens. No prejudicial act was done.

Similarly, prejudice must be shown when the jury takes documents into its deliberations. *Posey and Michael* v. *State*, (1955) 234 Ind. 696, 131 N.E.2d 145; *McClanahan* v. *State*, (1954) 233 Ind. 365, 118 N.E.2d 734. The juror who had the notes testified that she made these simple notes at home without communication to or from another person. The other jurors testified that the existence

of these notes did not affect their deliberations or their individual decisions. We think that what we have said on the closely related matter of juror note-taking at trial is applicable to the situation in this case:

"Our judgment is that it is a discretionary matter with the court whether or not it thinks it would be reasonable for jurors to take some notes to support their memory with reference to the complexities of any particular case. An abuse of such discretion must be shown to constitute error. Judges and lawyers alike, as we have previously said, consistently take notes during trial proceedings for the very same purpose. We see no reason why, normally, a juror should be deprived of this assist or help in arriving at his verdict. We find no error presented on this point." *Dudley* v. *State*, (1970) 255 Ind. 176, 263 N.E.2d 161, 164.

In regard to the allegation that the bailiff gave to the jury information or directions not authorized by the trial judge we point out that neither Appellant's Brief nor our examination of the hearing on the Motion to Correct Errors reveals specifically what unauthorized remarks the Bailiff is supposed to have made. In any event, no words or actions of the bailiff having been shown to have prejudiced Appellant, a new trial is not warranted. *Masterson* v. *State*, (1895) 144 Ind. 240, 43 N.E. 138; *Luck* v. *State*, (1884) 96 Ind. 16; *Newkirk* v. *State*, (1866) 27 Ind. 1.

We think that the situation of the bailiff communicating the trial judge's directions regarding the juror's notes is within the realm of *Conrad* v. *Tomlinson*, (1972) 258 Ind. 115, 279 N.E.2d 546. In that case the jury thought they had lost a verdict form. The judge, through the bailiff, told the jury to look again and if they had further questions to come into open court to ask them. We said:

"Although the preferred procedure in matters such as this is that the Bailiff instruct the jury that they could request to be brought into open court to ask their question, this Court is of the opinion that the failure to follow such procedure does not constitute reversible error unless some harm or prejudice has been suffered by the objecting party. When an irregularity such as this occurs harm will be

presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed." *Conrad, supra,* 279 N.E.2d at 551.

In the case at hand the judge, through the bailiff, told the jury to continue its deliberations. This explanation indicates that no harm or prejudice resulted from the irregularity.

(B) Appellant's final claim of error is that the trial judge erred in quashing a subpoena which Appellant had tendered for the hearing on the Motion to Correct Errors. However, both the persons named in the subpoena, the bailiff and a juror, appeared at the hearing as state's witnesses and were cross-examined by Appellant. Appellant does not state that he was harmed by the quashing of this subpoena, and we think he was not harmed.

It is our conclusion that Appellant received a fair trial. The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 330 N.E.2d 88.