Curtis GANN, Appellant,

v.

STATE of Indiana, Appellee.

No. 41S00–8808–PC–719.

Supreme Court of Indiana.

Feb. 12, 1990.

Susan K. Carpenter, Public Defender, Margaret Hills, Sp. Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Two separate cases were originally filed in this cause; however, on October 16, 1973, by stipulation of the parties, the two cases were consolidated in a *nunc pro tunc* order dating back to November 6, 1972.

This is an appeal from the denial of appellant's second petition for post-conviction relief. In May of 1973, a jury trial resulted in the conviction of appellant of the murders of Jimmy and Brenda Powers, for

which appellant received two concurrent life sentences. The original convictions were appealed to this Court and affirmed. *Gann v. State* (1975), 263 Ind. 297, 330 N.E.2d 88.

In March of 1979, appellant filed his first post-conviction relief petition in which he was represented by private counsel, Niles Stanton. In October of 1979, the petition was denied and the cause was appealed to this Court, and the decision of the trial court was affirmed. *Gann v. State* (1983), Ind., 450 N.E.2d 1003.

At the time of the appeal, Niles Stanton had withdrawn from the case and appellant was represented by Susan K. Carpenter, Public Defender of Indiana, and Sheila K. Zwickey, Deputy Public Defender. Appellant filed his second petition for post-conviction relief *pro se* in March of 1985. In June of 1985, the Public Defender of Indiana through its Deputy Public Defender, Teresa D. Harper, entered her appearance on appellant's behalf. The *pro se* petition was amended, and a hearing was held in December of 1987. In February of 1988, the petition was denied. This is an appeal from that denial.

Appellant claims the trial court erred in denying his petition for post-conviction relief on the basis of waiver. In this second petition for post-conviction relief, appellant for the first time raised the issue of ineffectiveness of counsel. He takes the position that his original trial counsel, his appellate counsel on his original conviction, his trial counsel on his first post-conviction relief petition, and the appellate counsel on his first post-conviction relief petition were all ineffective, claiming in part that each in turn was ineffective for not raising the incompetency of the predecessor. The trial court ruled that the failure of each successive attorney to challenge the competency of his predecessor constituted a waiver of those issues.

Post-conviction relief is not a proper forum for the raising of issues available to a petitioner on his original appeal. *Barker v. State* (1987), Ind., 508 N.E.2d 795. An exception to this rule may be implemented if appellant is successful in showing that

the matter which otherwise would be waived is fundamental error. *Id.; Haggenjos v. State* (1986), Ind., 493 N.E.2d 448. By alleging incompetency of counsel, appellant invokes a myriad of accusations against each of the previous counsel in an attempt to demonstrate incompetency, which he in turn attempts to parlay into fundamental error.

He claims his trial counsel failed to properly investigate the case and to call witnesses to testify in his behalf (the record indicates that a large number of these witnesses were family members, some of whom were involved in the melee which resulted in the death of the victims). He also alleges that trial counsel failed to object at various points during the trial, failed to tender proper instructions, and failed to object to instructions tendered.

He claims his original appellate counsel were negligent in not raising the issue of the incompetency of his original trial counsel, although it should have been clear to them from the record that the trial counsel was incompetent. He contends his original counsel in his first post-conviction relief petition was incompetent for not challenging the competency of his three original appellate counsel and his original trial counsel.

Although we take the position that the trial court was correct in denying appellant's second petition for post-conviction relief, we have examined the record as to the conduct of the original trial counsel and find that appellant falls far short of any demonstration of incompetence of that counsel.

Appellant has submitted affidavits of members of his family and friends who state that they were intimidated by police officers and thus were prevented from testifying at appellant's first trial. This alleged intimidation was that they might be prosecuted inasmuch as they had been participants in the melee. They therefore now claim that this threat of possible prosecution prohibited them from testifying in appellant's behalf. However, nowhere in these affidavits or in appellant's other allegations is there any indication as to what

they might have testified, which would tend to work as a defense for appellant.

Appellant takes the position that his trial counsel knew of this situation but failed to attempt to call the friends and relatives as witnesses. After trial counsel had conversed with each of these so-called potential witnesses and made the decision not to use them as witnesses, one hardly can surmise that he was incompetent in so doing. To refuse to use friends and relatives of appellant who were in some manner involved in appellant's case hardly can be viewed as a mark of incompetence. It falls well within the realm of tactical decisions for which a court of appeals will not second-guess counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ Appellant contends his trial counsel showed incompetence in that he did not insist upon appellant's right to a speedy trial, which appellant had requested. Actually no motion for a speedy trial was filed. However, appellant had written a letter to the trial judge stating that he wished the case to proceed with dispatch. There is no showing in this record that counsel ever made such a request or that such a request was called for. Trial counsel was engaged at the time in attempting to prepare appellant's defense. The record shows that the trial was held well within the year after appellant's arrest and one must presume that counsel felt the time involved was needed to prepare for trial.

There is a total lack of showing in this record of any incompetence on the part of trial counsel for failing to file a motion for speedy trial. Nor is there any showing or allegation that any possible delay caused by such a failure worked to appellant's detriment.

■ Appellant claims his trial counsel was incompetent in failing to object to Jury Instruction No. 6, which read: "You are instructed that every man is supposed to intend the natural consequences of his own acts." Appellant cites *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, which holds that a similar instruction is reversible error because it

shifts the burden of proof to the defendant on the critical question of intent in a criminal prosecution.

However, *Sandstrom* was decided six years subsequent to the submission of the questioned instruction in appellant's case and four years after appellant's direct appeal was decided. We cannot say that the original trial counsel was incompetent because he did not make an objection to an instruction which had not yet been held to be reversible error. Nor can we say that appellate counsel was incompetent for failure to raise that issue when the *Sandstrom* case was decided four years after they wrote their brief. We decline to apply the *Sandstrom* case retroactively once the direct appeal is final. *See Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649; *Love v. State*, (1988), Ind., 519 N.E.2d 563, 565.

We would observe that other instructions to the jury in the original trial clearly stated the necessity for the jury to find that appellant acted with malicious intent and premeditation in order to find him guilty of first-degree murder. We further would point out that trial counsel tendered a similar instruction which was not given by the trial court because of its own instruction which was given. *See Gann, supra,* 263 Ind. at 298–299, 330 N.E.2d at 90. This Court will not, at this late date, second-guess trial counsel to the point of declaring him incompetent by his failure to object to the above instruction. *Strickland, supra.*

Appellant also contends his trial counsel was incompetent because he failed to object to prosecutorial misconduct. Appellant draws the conclusion, without any allegation of proof, that the prosecutor failed to disclose to him deals which had been made with several named State's witnesses in return for their testimony against appellant. His support for this presumption is, "Gann feels that it is only logical that the charges were dismissed in return for their testimony and that he should have been informed of the 'deals'." There is no showing in this record beyond appellant's pure speculation that such a situation existed. Certainly, if it did, and it well might have,

we see nothing in this record to indicate that such information was withheld by the prosecutor. We will not engage in guesses and suppositions as to what might have been.

Appellant also claims the prosecutor engaged in suppression of material evidence in that he failed to include photographs of the crime scene, bullets and pellets recovered during the investigation of the case, including at the scene and from the person of G.L. Staten, and blood samples taken from inside and outside the crime scene.

At his second post-conviction relief hearing, appellant testified that he was convinced that this evidence existed because "a proper police investigation always gathers this sort of evidence." Here again, there is absolutely no evidence in this record to indicate that the police or the prosecutor withheld any such evidence. We cannot decide this case based upon appellant's guesses and suppositions.

Appellant also claims the prosecutor engaged in misconduct by allowing law enforcement officials to intimidate his witnesses so that they would not testify in his behalf. The only evidence in this regard are the affidavits of appellant's friends and relatives, who were in some manner engaged in the melee leading to appellant's prosecution. They state in their affidavits that they were afraid to testify because police threatened that they might be prosecuted as a result of the occurrence.

Here again, the record shows that appellant's trial counsel explored the possibility of these people testifying, but for reasons we must presume to be tactical, determined he would not use their testimony. The affidavits alleging police intimidation were made in 1981, eight years after the trial was held. There is no allegation that the prosecutor participated in or even knew of such a situation, if it in fact existed. We cannot consider this to be evidence of prosecutorial misconduct at the time of trial.

■ Appellant also contends the prosecutor engaged in improper conduct during his opening argument. This, of course, is a matter which was well known to trial counsel and to the original appellate counsel.

In examining the allegations, we find that the prosecutor referred to the altercation in which the victims were killed as "a family or gang dispute between the Ganns and the Statens," and that the prosecutor further allegedly was guilty of misconduct in that he stated he was not there to prosecute innocent persons. Appellant thus draws the conclusion that the prosecutor was conveying to the jury that he had inside information indicating the guilt of the defendant. We see nothing in either of the remarks which would give rise to a successful allegation of misconduct.

The State established that the melee originated as a fight between the two groups. The fact that the prosecutor referred to them as families or gangs cannot be held to have a sinister connotation beyond the facts of the case. As far as the prosecutor's remark that he was not there to prosecute innocent people, there was no indication at all in the prosecutor's statement that he had inside knowledge that would not be presented to the jury nor did he go farther than any prosecutor goes when he asks the jury to find the accused person guilty upon the evidence.

There is nothing in any of the above conduct by the prosecuting attorney which trial or appellate counsel might have successfully used to gain a new trial. Therefore it cannot serve as a basis for finding either counsel incompetent in their representation of appellant.

Appellant also contends the State unconstitutionally amended the indictments against him in that the indictments charged first-degree murder and the State's theory on the prosecution was that the victims were killed when appellant fired a shotgun blast at the members of the Staten family. There in fact was no amendment to the indictment and the State's theory of the case as transferred intent was well known to all concerned from the inception of the case. It moreover is a legitimate procedure to be followed in a first-degree murder prosecution. See Holt v. State (1977), 266 Ind. 586, 365 N.E.2d 1209. Thus this claim cannot support an allegation that tri-

al counsel was incompetent in failing to raise such an issue.

■ Appellant claims he was denied the right to confront and cross-examine witnesses against him in that a police officer was permitted to testify as to what persons told him during the course of his investigation of the shooting. The officer remembered that the father of one of the participants said, "Look what kind of a mess you got yourselves into now," and in another instance, he testified that one of the participants responded to threats against his brother by saying, "Listen, you don't have to worry about Marion. Marion's not going to say anything." Even though these statements were hearsay, they were general statements garnered by the officer during his investigation. We fail to see in what manner either one of the statements possibly jeopardized appellant. Therefore we cannot say that trial counsel erred in failing to object to such testimony.

The second post-conviction relief court was correct in its observation that many of the issues attempted to be raised by appellant had been decided either in his original appeal and first post-conviction relief petition or had been waived by the failure to so raise them. Our sole purpose for examining the record as above indicated was to determine whether there was merit to appellant's allegations of the successive acts of incompetence on the part of his attorneys. On this record, appellant has failed to demonstrate any such incompetence.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., concurs in result without separate opinion.

PIVARNIK, J., not participating.